## WEARE v. SAWYER.

An article in the warrant for a school district meeting, to be held before the law of July 9, 1855, to "raise money" to build a school-house, will not authorize a vote to borrow money for that purpose, though passed at an adjourned meeting held after that law took effect.

In a suit against a surety upon a promissory note, given by a school district as principal, it is no defense, in the absence of fraud, that the name of the district was signed without authority.

Nor can it be shown, by parol evidence, that the surety signed the note with the understanding that he was surety only for the performance, by the district, of its legal liability.

ASSUMPSIT upon a promissory note, a copy of which is set forth in the case *Weare* v. *School District No.* 16, in said town, reported in this volume.

The parties agree that the facts in this case are the same as reported in the case against said school district.

If it would be competent for the defendant, Sawyer, to show that he signed said note with the understanding that he was surety only for the performance, on the part of the district, of its legal liability, it was, for the purposes of this case, admitted that such was the fact.

The parties agreed that judgment be rendered according to the opinion of the court upon the foregoing statement of facts, reserving to either party the right of a trial by jury.

*Morrison, Stanley & Clark*, for the defendant.

Sureties are never held responsible beyond the clear and absolute terms and meaning of their undertaking, and presumptions and equities are never allowed to enlarge, or in any degree to change their legal obligations. *Leggett* v. *Humphreys*, 21 How. U. S. 66.

The liability of a surety is not to be extended by implication beyond the very terms of his contract; and where the defendant had become surety on a note payable to the president, directors and company of a bank, but which was never negotiated at their bank, but transferred by the maker to a third person, it was held that he was not liable to the holder, though the bank authorized a suit in their name. *Manufacturers' Bank* v. *Cole*, 39 Me. 188.

The application of these well established principles to this case determines the nature and extent of the defendant's liability. The note in question, and which the defendant signed as surety, purports to be the note of the school district, and we think the plaintiffs' counsel is correct, when he says, in his brief in *Weare* v. *School District*, "that it must be clearly apparent that but one inference can be drawn from the words used, and that is, that the parties intended this to be the note of the district and not of its agents."

If the district is liable upon the note, then Sawyer is liable as surety, but if the district is not liable, then Sawyer is not liable as surety, because his understanding and the intention of the parties in executing the contract is clearly apparent from the language used in the instrument itself; and in addition to this the case expressly finds that the money was raised for the use of the district, and actually used by them. How, upon this state of facts, can the defendant be regarded as the surety of Jepson and Gove in their individual capacity?

That the district is not liable upon the note, we have endeavored to show, in our brief in the action, *Weare* v. *School District*, in Weare, and it is unnecessary for us to reiterate our positions and arguments in this case.

*Fowler & Chandler*, on the same side.

The note in suit was clearly intended to be and is, upon its face and in form, the note of School District No. 16, in Weare, as prin-

cipal, and of the defendant and others as sureties for said district.
The money was borrowed under the express authority of the vote
of the district authorizing the loan in its name for a specified pur-
pose. The note itself recites that authority and purpose, and the
case finds that the money secured by the note was actually devoted
to that purpose, and used for the sole benefit of the school district.
The defendant, then, signed the note as surety for the district only.
If the district can not, for any reason, be held upon the note, can
the defendant be held upon it as surety for the prudential commit-
tee and clerk, as individuals? We respectfully submit that he can
not, for the following reasons :

1. The liability of a surety is commensurate with that of the
principal, and, as a general rule, the discharge of the principal, or
an extinction of his liability, extinguishes the liability of the surety
also. The exceptions to this rule do not include the present case.
*St. Albans Bank* v. *Dillon,* 30 Vt. 122 ; *M'Broom* v. *The Governor,*
6 Port. (Ala.) 32 ; *Evans* v. *Huey,* 1 Bay 13.

2. To hold the defendant as surety for the prudential committee
and clerk, would be to hold him, by implication and legal construc-
tion, to the performance of a contract materially different from that
which he made. And nothing can be clearer, both upon principle
and authority, than the doctrine that his liability can not be thus
extended beyond the precise terms of his contract. To the extent,
in the manner, and under the circumstances, pointed out in his
obligation, he is bound, and no farther. It is not sufficient that he
may sustain no injury by a change in the contract, or that it may
even be for his benefit. He has a right to stand upon the very
terms of his contract ; and if he does not assent to any variation
of it, and a variation is made, it is fatal. *Miller* v. *Stewart,* 9
Wheat. 727 ; *Russell* v. *Gulwel,* Cro. Eliz. 657 ; Shep. Touch. 68,
69 ,71, 364, 367, 370 ; *Shelley* v. *Wright,* Willes 9 ; *Bowerbank* v. *Mor-
ris,* Wal. 125 ; *Pearsall* v. *Summersett,* 4 Taunt. 593 ; *Dance* v. *Grid-
ler,* 4 Bos. & Pull. 34 ; *Wardens* v. *Bostock,* 5 Bos. & Pull. 175 ;
*Wright* v. *Russell,* 3 Wil. 530 ; *Strange* v. *Lee,* 3 East 484 ; *Rees* v.
*Berrington,* 2 Ves. Jr. 540 ; *Cowe* v. *Fairfax,* 4 Hen. & Mun. 208 ;
*Rathbone* v. *Warren,* 10 Johns. 587 ; *Walsh* v. *Bailie,* 10 Johns.
180 ; *Ld. Arlington* v. *Merrick,* 2 Saund. 412 ; *Stubbs* v. *Clough,* 1
Str. 227 ; *U. S.* v. *Boyd,* 15 Pet. 187 ; *Manf. Bank* v. *Cole,* 39 Me.
188 ; *U. S.* v. *Cushman,* 2 Sumn. 426 ; *Ludlow* v. *Simond,* 2 Caines
Cases in Error, 1 ; *Chase* v. *M'Donald,* 7 Har. & Johns. 160 ; *Brooks*
v. *Brooks,* 12 Gill & Johns. 306 ; *Leggett* v. *Humphreys,* 21 How.
(U. S.) 66 ; *St. Albans Bank* v. *Dillon,* 30 Vt. 122 ; *Bank of Wash-
ington* v. *Barrington,* 2 Penn. 27 ; *Evans* v. *Huey,* 1 Bay 13 ; *Wayne*
v. *Kirby,* 2 Bail. 551 ; *Field* v. *Rawlings,* 1 Gil. 581 ; *Leavitt* v. *Sav-
age,* 4 Shep. 72 ; *Raney* v. *Barron,* 1 Branch 327 ; *Blair* v. *Ins. Co.,*
10 Mo. 559 ; *New-Orleans Co.* v. *Hagan,* 1 Louis. Ann. Rep. 62 ;
*Schroeppel* v. *Shaw,* 3 Com. 446 ; *Bethune* v. *Dozier,* 10 Geo. 235 ;
*Ratcliffe* v. *Graves,* 1 Vt. 196.

3. If, by any mistake or inadvertence in drawing the note, there
be uncertainty whether it is the note of the school district, as
intended, it is competent for the court to receive and consider

evidence as to the intention of the parties, and to treat the note as it was intended to be; and, in behalf of the defendant as surety, the court are bound thus to treat it. _U. S._ v. _Cushman_, 2 Sumn. 426; _Rawstone_ v. _Parr_, 3 Russ. 424, 539; _Thomas_ v. _Frazer_, 3 Ves. Jr. 399; _Burn_ v. _Burn_, 3 Ves. Jr. 573; _Wiser_ v. _Blackley_, 1 Johns. Ch. 607; _Berg_ v. _Radcliffe_, 6 Johns. Ch. 302; _Miller_ v. _Stewart_, 9 Wheat. 680; _Hunt_ v. _Rousmaniere_, 8 Wheat. 211, and 1 Pet. 16; _Powell_ v. _Sumner_, 2 Meriv. 36; _Langley_ v. _Brown_, 2 Atkyns 195; _Bishop_ v. _Church_, 3 Ves. Sen. 100, 371; 1 Story Eq., secs. 158, 161, 162, 163, notes and authorities; _Hoare_ v. _Contencin_, 1 Brown Ch. 27, and cases collected in notes a and c, Am. Ed. 25, 26; _Weaver_ v. _Shryork_, 6 S. & R. 262; _Rember_ v. _Mathers_, 1 Brown Ch. 52, and cases in note a, Am. Ed. 47; _Gillespie_ v. _Moore_, 2 Johns. Ch. 585; _Kinelbrack_ v. _Livingston_, 4 Johns. Ch. 144; _Tilton_ v. _Tilton_, 9 N. H. 391; _Langdon_ v. _Kirth_, 9 Vt. 299; 11 Vt. 138; 3 Phill. Ev., Cow. & Hill's Notes, 1484, notes 997, 998; _Atty. Gen._ v. _Sitwell_, 1 Y. & Coll. 559; _Peterson_ v. _Grover_, 20 Me. 363; _Wayne_ v. _Kirby_, 2 Bail. 551; _Schroeppel_ v. _Shaw_, 3 Comst. 446.

_I. W. Smith_, for the plaintiffs.

The defendant is surety upon the note according to its legal effect. If it is the note of the district, he is surety for the district. If it is the note of Gove, then he is surety for Gove. His understanding must be inferred from the written contract, otherwise it would infringe upon the well established rule excluding contemporaneous parol testimony from contradicting or varying a written contract.

Extrinsic evidence is inadmissible to alter the legal construction of words, or to affect a legal presumption arising from the construction. 3 Stark. Ev. 1012. It is also inadmissible to show the intention and purpose of executing the instrument, unless it be perfectly consistent with the legal operation of the instrument, and not inconsistent with its express terms. _Ibid._, 1047.

Parol evidence is inadmissible for the purpose of altering the legal operation of an instrument, by evidence of an intention to that effect which is not expressed in the instrument. _Ibid._, 1009; _Hunt_ v. _Adams_, 7 Mass. 518; _Stackpole_ v. _Arnold_, 11 Mass. 33; 1 Greenl. Ev., sec. 281.

If it was the understanding or agreement of the defendant that he was surety only for the school district, it should so appear upon the face of the contract itself, otherwise the effect is to make the note a different contract. _Savage_ v. _Rix_, 9 N. H. 269, and authorities there cited; _Andover_ v. _Grafton_, 7 N. H. 305.

_Perley_, on the same side.

1. The school district is liable on the note.

Jepson and Gove had authority, under the vote of the district, to bind the district by the note.

Prior to the statute of July 9, 1855, school districts had power to hire money for the purpose of building school houses. The statute (Comp. Stat. 172, sec. 1) empowers school districts to raise money

for that purpose without prescribing the method; whereas, in the case of money voted for the annual support of schools, the statute requires the sum voted to be assessed in the taxes of that year. This power to raise money by temporary loan is implied in the power and duty to build school-houses, because, though the money must be ultimately raised by taxation, it would be inconvenient and oppressive to raise in the tax of a single year the whole amount required to build an expensive school-house; and the general grant of authority to raise money for that purpose, without prescribing the method, when, in the other case, the sum voted is required to be assessed in the tax of the same year, shows that it was the intention of the legislature to make a distinction in this respect between the ordinary yearly expenses of maintaining schools, and the extraordinary burden incurred at long intervals by building a new schoolhouse. The statute of 1855, we maintain, is not the grant of a new authority, but a restriction and limitation of the general authority given by the previous law. Ang. & Am. on Corp. 234, 245.

The district had authority to contract the debt and give the note, under the statute of 1855. The statute took effect from and after its passage. The article in the warrant was not disposed of at the meeting held on the 7th of July, but remained for further action at the adjourned meeting. The whole article was in the power and under the control of the meeting until the final adjournment, and the vote in question was after the act of 1855 went into operation, and within the provisions of that act. Randall v. Smith, 1 Denio 214; Kingsbury v. School District, 12 Met. 99.

There can be no question that the district, at the time when the money was hired and the note given in their behalf, had power, under the statute, to hire the money and give the note. The district have authorized the school-house to be built; have voted the money to build it, and the sum hired is within the limits of the vote for raising the money. The money has been received by the authorized agents of the district, and applied to the use of the district in discharging debts contracted in building the school-house which the district had voted to build. This is not the case where an agent has attempted to involve the district in an unauthorized amount of expense; nor where the agent or contractor has annexed to the land of the district a building without authority from the district. The amount was authorized, by the vote of the district, to be expended in building the school-house. The money has been received by the authorized agents of the district, and applied, by authority of the district, to their use, in discharging their liabilities contracted in carrying into effect their vote to build the schoolhouse; and the district are estopped to deny the authority of the agents, who hired money in the name and behalf of the district, which has been thus applied by the district to their use. Keyser v. School District, 35 N. H. 477; Fisher v. School District, 4 Cush. 494.

2. But if Jepson and Gove, having authority to bind the district, have not used in the note terms sufficient to bind the district, they are bound individually, and are the principal debtors on the note, and whether it is the note of the district, or the individual note of

the agents, must be determined as matter of law by construction of the language used in the instrument itself.

3. If Jepson and Gove undertook, without authority, to give the note of the district, the terms used here are sufficient to bind them individually, and they are the principal debtors on the note. *Savage* v. *Rix*, 9 N. H. 263; *Woodes* v. *Dennett*, 9 N. H. 55.

4. The defendant, Sawyer, is liable, though neither the school district nor the agents individually are so. Nothing has been done to discharge the defendant since he became party to the note. The position taken for him is, that if the district is not liable, the whole note was void *ab initio*. There is no suggestion of any fraud practiced on the defendant to procure his signature. The most favorable view for the defendant is, that all parties supposed the district was liable; that the note was presented by those who obtained the money on it, as the valid note of all the parties named in it, and that the plaintiffs parted with their money on it, supposing it to be the valid note of all those parties. The argument of the defendant would seem to be this: The defendant is a surety; where there is a surety there must be a principal; the district is not liable, and there is no principal on the note; therefore the defendant is not liable as surety.

In this argument there is a double fallacy; for, so far as his contract with the plaintiffs is concerned, the undertaking of the defendant is not in the nature of a guaranty or security for another, but an absolute, joint and several promise to pay the money himself, according to the tenor of the note; and then, again, even if the contract of the defendant could be regarded as collateral to the undertaking of the principal debtor, the surety guarantees that the party whose name is on the note is liable as the principal, and will pay according to the promise which the supposed party appears to have made by the note.

But, except in some cases where, by statute, a principal is required to give bond with sureties, it is believed that no respectable authority can be found to countenance the position that, if a man set his name to a bond or promissory note as surety, jointly and severally with one whose name at the time is on the note or bond as principal, and leaves the note or bond to be delivered in that form to the obligee or payee, he can defend himself by showing that the party named as principal was for any reason not liable as such.

But the defendant is not sued here as surety for any other party, but on his own undertaking as a several and sole promisor in the note. He is not a collateral guarantor for the undertaking of another. He does not engage that the school district shall pay; he is sued on his own positive and absolute undertaking to pay himself. The word surety added to his name is no part of the contract. In declaring, it is not necessary nor usual to take any notice of such a suggestion in the note. It may have the effect of notice, to the holder, of the relations existing outside of the contract between and among the makers of the note; but notice in any other way is equally effectual to protect the rights of a surety against injury which he may suffer from change in the terms of the contract; but

while the absolute joint and several undertaking of the maker named as surety remains unchanged; so far as relates to the rights of the holder or the liability of the maker to him; they are all principals. *Wilson* v. *Campbell,* 1 Scam. 493; *Davis* v. *Barrington,* 30 N. H. 525.

If the creditor make a new contract with the principal debtor, the original contract is vacated by the new one, and the surety is discharged; so if the creditor hold a fund as security, and dispose of it to the injury of a party, whether principal or surety, it operates as payment *pro tanto.* But while the original contract remains unchanged, the holder of a joint and several promissory note has nothing to do with questions of principal and surety among the makers. He claims on all and each of them, by virtue of their absolute joint and several promise to pay the sum named in the note.

The authorities cited to the doctrine that the undertaking of a surety should be construed strictly, have no bearing here; for no question arises on the construction of the contract; the undertaking of the defendant is clear and absolute, to pay the sum named in the note. There is no possible doubt as to the meaning and extent of the terms used.

So the numerous authorities cited to the doctrine that the surety is discharged by giving time to the principal, or by any other change in the original contract, are quite foreign to this case, because there has been no change in the original contract. Rolle 41, cited 4 Petersdoff 612; *St. Albans Bank* v. *Dillon,* 30 Vt. 122; *Stewart* v. *Boehm,* 2 Watts 356; 3 U. S. Dig. 496, n. 154; *Smalley* v. *Head,* 2 Rich. 590, are authorities to the point that where the name of the principal is set to an instrument without authority, or where the party signing as principal is not bound, for want of legal capacity, the surety is nevertheless bound.

BELLOWS, J. It has already been decided, in *Weare* v. *School District,* and *Weare* v. *Gove,* reported in this volume, that the vote to borrow money was not passed at a meeting duly called for that purpose; and, therefore, as the agents of the district had no authority to put its name to the note, they are themselves bound; and the remaining ground of defense proposed to be set up is, in substance, that at the time of the making of the note it was agreed that the defendants' undertaking should extend no farther than to insure the performance of such contract as had been legally entered into by the school district, whereas the defendants' contract to pay the money is on its face absolute.

The general rule would, undoubtedly, exclude such parol evidence; and we are not aware of any exception by which it could be admitted.

It is true that parol evidence may be received to prove that one of the makers is but a surety; although nothing of the kind appears upon the face of the instrument. *Bank* v. *Kent,* 4 N. H. 221. This, however, is not for the purpose of varying the obligation as originally entered into, but is admitted in connection with proof

of indulgence to the principal, to show a subsequent discharge of such surety, by substituting a new contract, to which he was no party.

The case of *Hoyt* v. *French*, 24 N. H. 198, is in point. There it was proposed to show by parol that when the surety signed the note it was agreed that the first money paid by the principal should be applied thereon, and that money had been so paid, but not applied; and it was held that the evidence was not admissible, as the effect would be to vary the terms of the note. Of the same character is *Lang* v. *Johnson*, 24 N. H. 302.

It is said, also, that the liability of the surety is coextensive only with that of the principal, and that the school district must be regarded as the principal here. As a general proposition it may be true that, in the contract of guaranty, there must be a principal who is also liable. It would be true in all cases where the guarantor stipulated to guaranty the performance of the principal's engagement.

But in that large class of cases where the contract is to pay a specific sum of money, there, we apprehend, the guarantor or surety is, in the absence of fraud, bound by the terms of his contract, although his principal, by reason of coverture, infancy, or want of authority in the person assuming to act for him, is not bound.

So it is laid down (Chit. on Cont., 9 Am. Ed. 441) in respect to infants, married women, and other persons incompetent to contract; and we see no reason why the same doctrine does not apply to the case of a want of authority. In fact it appears to have been so applied in the case of a surety for a partnership, where the name of the firm was affixed to the note without authority. *Stewart* v. *Boehm*, 2 Watts 356; 3 U. S. Dig. 496, sec. 154.

The same principle is recognized in *Conn* v. *Coburn*, 7 N. H. 368–373, where a surety for an infant upon a promissory note, given for necessaries, having paid the note, was permitted to recover the amount of the infant; *Parker*, J., holding, that as the surety was bound, as the debtor, to pay the note, he had a right to do so, and call upon the infant. Such, also, is the doctrine of *St. Albans Bank* v. *Dillon*, 30 Vt. 122, where the principal was a married woman. Pars. on Cont. 194.

Beside, in the case before us, the agents, who used the name of the district without authority, are themselves bound as principals, and it is not competent to show as a defense that the sureties supposed the district to be the principal. Had they been misled by fraudulent representations of the town, a remedy might be found for them; but as the case stands, they, acting upon their own understanding of the law and the facts, have promised to pay the sum loaned, and we think they are bound by it.

It is suggested, also, that, in case of a mistake in this respect, it may be shown and corrected, but we think it can not be done in this form, but only by bill in equity.

In accordance with the agreement of the parties, there must therefore be

*Judgment for the plaintiffs.*