RICHARD LAGERQUIST, Appellee, v. BANKERS BOND & MORTGAGE GUARANTY COMPANY, Appellant, et al., Appellees.

**INFANTS:** Contracts—Disaffirmance of Promissory Note—Release of
1. **Surety.** The disaffirmance by a minor of his contract of purchase and of his negotiable promissory note given in connection there-

with, before the property is delivered to him, releases the surety on the note of all liability to the *payee*, even though the surety signed the note because of the known minority of the principal. In case the note has passed to a holder in due course by indorsement by the payee, the liability of the indorser becomes primary and the liability of the surety becomes secondary.

**BILLS AND NOTES:** Consideration—Failure of Consideration by Disaffirmance. A promissory note executed by a minor for undelivered property is deprived of all consideration by the disaffirmance of the note by the minor prior to any delivery of the property, and by the acquiescence of the payee in such disaffirmance.

Headnote 1:  8 C. J. p. 381; 32 Cyc. p. 27.  Headnote 2: 8 C. J. p. 755.

*Appeal from Webster District Court.*—SHERWOOD A. CLOCK, Judge.

NOVEMBER 24, 1925.

REHEARING DENIED FEBRUARY 19, 1926.

ACTION in equity by a minor by his next friend, to cancel his subscription to the capital stock of a corporation and a note given therefor, against the payee of the note and a holder of the note in due course. A surety on the note was made a party by a petition of intervention of the holder of the note. From a decree holding the payee primarily liable on its indorsement, and the liability of the surety to be secondary, the defendant payee appeals.—*Affirmed.*

*Kelleher & Mitchell,* for appellant.

*Mitchell, Files & Mulholland,* for Richard Lagerquist, appellee.

*Price & Burnquist,* for Gowrie Savings Bank, appellee.

*Healy, Thomas & Healy,* for S. E. Weitzel, appellee.

VERMILION, J.—The plaintiff, Richard Lagerquist, while a minor, subscribed, by a written contract, for 40 shares of the capital stock of the appellant corporation, the Bankers Bond

& Mortgage Guaranty Company, at $125 per

1. INFANTS: con-
tracts: disaf-
firmance of
promissory note:
release of
surety.

share. He executed two notes therefor, payable to the appellant, one for $3,750 and the other for $1,250. This controversy has to do only with the latter note.

It appears from the record that the stock salesmen who made the sale of the stock, knowing that Lagerquist was a minor, refused to accept his subscription unless he obtained the signature of a responsible adult upon the note for $1,250. Lagerquist thereupon procured the appellee Mrs. Lundvick, his aunt, to sign the note, and delivered it to the salesmen. One of the salesmen indorsed it in the name of the appellant; the defendant Weitzel also indorsed it; and it was then sold to the defendant the Gowrie Savings Bank for its face. The bank issued a cashier's check or draft for the amount, payable to appellant, which was delivered at appellant's office. The draft was indorsed by appellant's treasurer, and paid in due course. No stock was ever issued to Lagerquist, and before he arrived at his majority he disaffirmed the contract, and began this action by a next friend against appellant and the bank, asking for the cancellation of the subscription contract and the note for $1,250.

The bank, in addition to its answer, filed a petition of intervention, asking that Mrs. Lundvick and Weitzel be made parties. The bank claimed to be a holder of the note in due course, and asked judgment against all parties, makers or indorsers of the note.

The decree below granted the relief asked in the petition of Lagerquist, and found that the bank was a holder in due course, and that the other parties to the note, aside from Lagerquist, were liable to the bank in the following order: (1) the appellant upon its indorsement, (2) Mrs. Lundvick as a surety, and (3) Weitzel upon his indorsement. The Bankers Bond & Mortgage Guaranty Company alone appeals. Its only complaint is as to the order of liability fixed in the decree, its claim being that Mrs. Lundvick was primarily liable as a comaker or surety, and that its liability as indorser is secondary.

There can be no question, under the record, that Mrs. Lundvick was, as between her and Lagerquist, a surety only, and that appellant was chargeable with notice of that fact. The case

turns upon whether, under the circumstances shown by the record, Mrs. Lundvick was released from liability to the appellant by the disaffirmance of the note and contract of subscription by Lagerquist, the principal on the note. It is not questioned that the general rule is that the release. or discharge of the principal releases the surety. Appellant relies, however, on an exception to this general rule, stated by Judge Dillon in *Jones v. Crosthwaite,* 17 Iowa 393, to exist where a person *sui juris* guarantees the obligation of, or becomes surety for, a minor, or other person incapable of contracting. The existence of such an exception has been recognized by this court in subsequent decisions. *Allen v. Berryhill,* 27 Iowa 534; *Keokuk County St. Bank v. Hall,* 106 Iowa 540; *Seeley v. Seeley-Howe-LeVan Co.,* 128 Iowa 294. The doctrine has abundant support in authority generally. *Winn v. Sanford,* 145 Mass. 302 (14 N. E. 119); *Kyger v. Sipe,* 89 Va. 507 (16 S. E. 627); *Wiggins' Appeal,* 100 Pa. St. 155; *Gardner v. Barnett,* 36 Ark. 476; *Weed Sew. Mach. Co. v. Maxwell,* 63 Mo. 486; *Weare v. Sawyer,* 44 N. H. 198; *International Text-Book Co. v. Mabbott,* 159 Wis. 423 (150 N. W. 429); *Lee v. Yandell,* 69 Tex. 34 (6 S. W. 665); *Gates v. Tebbetts,* 83 Neb. 573 (119 N. W. 1120, 20 L. R. A. [N. S.] 1000, and note). The fundamental reason for this exception to the general rule is that the defense of infancy, or other incapacity to contract, is one personal to the principal, and does not go to the validity of the contract itself. But it is recognized that this exception finds no application where the principal, being under the disability of minority, disaffirms the contract and restores to the other party all that he has received thereunder. In such case the defense ceases to be merely personal to the minor; for, by the disaffirmance of the contract and the placing of the other party *in statu quo* by restoring what he has received, the consideration for the promise has failed, and the contract, so far as its enforcibility at the suit of the other party to it is concerned, is at an end.

In such a case, in *Keokuk County St. Bank v. Hall,* supra, we quoted from *Baker v. Kennett,* 54 Mo. 82, as follows:

"It would be a strange doctrine which would give him [the creditor] back his land and permit him to recover from the sureties the purchase money also."

We said:

"If Hill .[a minor] did in fact disaffirm the ·contract, and return the property received thereunder to Skinner Bros. [the payee], it would be a complete defense for the surety."

Again, in *Seeley v. Seeley-Howe-LeVan Co.*, supra, we said:

"It is the settled law of this state that a mere disaffirmance of his ·contract by a minor does not release the obligation of his surety, * * * but such effect does follow a disaffirmance accompanied by a return or surrender of the consideration received for the contract."

This doctrine is recognized in decisions in other jurisdictions. *Baker v. Kennett*, supra; *Kyger v. Sipe*, supra; *Evants v. Taylor*, 18 N. M. 371 (137 Pac. 583, 50 L. R. A. [N. S.] 1113); *Nations v. Gregg*, 290 Fed. 157.

Counsel for appellant attempt to distinguish the instant case from the *Hall* and *Seeley* cases on the facts. While in the latter, it is true, fraud was shown, the decision on this point was not put upon that ground, but upon the disaffirmance by the principal, a minor, and the return of the property received. In both of these cases there was a return of the property received by the minor in connection with his disaffirmance, but this fact does not at all distinguish them in principle from the present case. Since Lagerquist had received nothing, he had nothing to return, to make his rescission complete. Appellant had parted with nothing, and on disaffirmance there was nothing to be restored to it, to put it in *statu quo*. If the surety cannot be held where the principal has disaffirmed and returned what he received, there can be no reason for holding the surety where the principal disaffirms and has received nothing to return.

Here, the only consideration for the note was the promise of the appellant, the payee, to issue its stock to Lagerquist. Lagerquist had disaffirmed his contract to purchase the stock, and appellant has acquiesced in this disaffirmance. It

2. BILLS AND NOTES: consideration: failure of consideration by disaffirmance.

offered to return his note of $3,750, and marked his subscription contract canceled. Appellant parted with nothing as a consideration for the note, and by the disaffirmance and its acquiescence therein, there has been a complete rescission of the contract, and appellant has·been relieved of any and all obligation to ever issue

the stock for which the note was given. There remains no consideration for the note. The defense of failure of consideration is not one that is personal to the principal, but it goes to the existence of the debt, the enforcibility of the note in the hands of the payee. All authorities agree that a defense of this character comes within the general rule, and releases both principal and surety at the suit of the payee. In *Evants v. Taylor,* supra, it is said:

"If the late infant, on arriving at his majority, may disaffirm the deed, and if such disaffirmance renders it void *ab initio,*—propositions not questioned,—and if the deed tendered vests the payee in all that he ever parted with in consideration of the note, which it does, as far as the record in this case discloses, then the consideration of the note is wiped out or extinguished. The defense is failure of consideration, which is good as between the original parties to the note."

While the ultimate question here is as to the order of liability, as between appellant, the payee and indorser, and Mrs. Lundvick, the surety, to the bank as a holder in due course, that depends upon the existence of a present liability on the part of the surety to the payee. If the surety could not be held liable to the payee, the latter's liability on its indorsement to a holder of the note in due course, as between the payee and the surety, is the primary liability.

It is insisted that the surety signed the note knowing of the incapacity of the principal, and for the very purpose of removing the possibility that it might be invalidated by his disaffirmance. This is given by many authorities as a ground for the exception in such cases to the general rule that what releases the principal also releases the surety. But it cannot afford any basis for a recovery by the payee against the surety when the principal, by disaffirming and returning what he received, or by disaffirming where he received nothing, has put an end to the contract that furnished the only consideration for the note. Such a situation, as we have said, presents more than a defense personal to the principal.

The appellant transferred the note to the bank by indorsement, and received the proceeds in the form of a draft payable to its order. This draft it indorsed and turned over to the

stock salesmen in payment of their commission for procuring the subscription. In so doing, it was merely discharging its own obligation to a third party. It received the full benefit of the note. To hold the surety primarily liable to the bank would not only be, in effect, to permit appellant, the payee, to recover upon a note the consideration for which has failed, but would result in allowing it to receive and retain the benefit and proceeds of the note for which it parted with nothing; while to hold it primarily liable is but to require it to return what it so received.

The decree below is right, and it is—*Affirmed.*

Faville, C. J., and Stevens, De Graff, and Albert, JJ., concur.